### PECKHAM
### v.
### FAMILY LOAN CO. et al.
### No. 14410.

United States Court of Appeals,
Fifth Circuit.
April 22, 1954.

———◆———

Richard E. Cotton, Leo S. Julian, Shutts, Bowen, Simmons, Prevatt & Julian, Miami, Fla., Jay E. Darlington, Hammond, Ind., for appellant.

W. G. Ward, Garland M. Budd, and Ward & Ward, Miami, Fla., for appellees.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This case was formerly before us on the appeal of complainant from a judgment dismissing his petition on the ground that the claim was barred by estoppel of a judgment in the state court. We reversed and remanded the cause for trial on its merits, and in doing so said:

"The sole question properly presented by this appeal is whether the court erred in holding that the plaintiff was estopped by a judgment against his predecessor in a prior proceeding." Peckham, Trustee, v. Family Loan Co., 5 Cir., 196 F.2d 838, 839.

This court there differentiated between the State Court case and the present one. Here on March 1, 1949, R. E. Peckham, Trustee, a citizen of Indiana, as assignee for creditors of the Meyer-Kiser Bank of *Indianapolis, Indiana,* called the Indiana Bank, brought suit against Family Loan Company, a corporation, Ferd S. Meyer, otherwise known as Ferdinand S. Meyer; Ferdinand S. Meyer, Trustee, otherwise known as Ferd S. Meyer, Trustee; Rosalyn A. Meyer, otherwise known as R. A. Meyer; James Meyer; James Meyer, Trustee; Hoke T. Maroon, otherwise known as H. T. Maroon; H. T. Maroon, Trustee, otherwise known as Hoke T. Maroon, Trustee, as citizens of Florida, and two weeks later filed an amended complaint, in which he alleged in substance:

That Sol Meyer, deceased, was one of the principal stockholders of said Indiana Bank up to the time it closed May 12, 1931; that on November 14, 1941, complainant's predecessor, Thomas E. Garvin, as Receiver of said defunct bank obtained affirmance of a judgment in the Appellate Court of Indiana against said Sol Meyer for the sum of $824,933.33 (Meyer V. Garvin, Receiver, 110 Ind. App. 403, 411, 37 N.E.2d 291) with interest at six percent, and that the Supreme Court of Indiana refused a writ of review on February 10, 1942; that the said judgment remained unpaid at the date of the suit filed here; that after obtaining it, complainant had it recognized and made executory against the said Meyer in the United States District Court for the Southern District of Florida to which state he had moved.

Further, that while insolvent, and the judgment remained unpaid, Meyer made certain "transfers, manipulations and concealment of assets, with the intent to cheat, hinder, delay and defraud said creditors" of the Indiana Bank in the collection of their said debt; that beginning in 1930 Meyer promoted the organization of Family Loan Company, a corporation, chartered on the 28th of March of that year, which began and has continued to make small loans; that he was the "equitable or actual owner" of the capital which went into its stock, and loaned it other monies for which it issued "stocks, notes and debentures * * * in his name." Further, that he

" * * * caused or knowingly permitted same to be issued or transferred as follows: Part in the name of his son, who is the defendand, *Ferd Meyer,* otherwise known as *Ferdinand S. Meyer;* part in the name of his son's wife, who is the defendant Rosalyn A. Meyer, otherwise known as R. A. Meyer; part in the name of one of his agents and employees who is the defendant Hoke T. Maroon, otherwise known

as H. T. Maroon, individually or as purported trustee; part in the name of Ferd's son, who is the defendant James Meyer; and part in the name of himself and his said son Ferdinand as purported trustees. Defendant James Meyer has since succeeded Sol Meyer as such purported trustee.

"(b) During the aforesaid period since the organization of said corporation and while said Sol Meyer was indebted to said Meyer-Kiser Bank of Indianapolis on the obligation which became merged in the aforesaid judgment against him—his son and close business associate, the defendant *Ferd S. Meyer,* was also obligated to another closely affiliated bank, *The Meyer-Kiser Bank of Miami, on an obligation which was reduced to judgment against said Ferd S. Meyer* in the Dade County Circuit Court (in this District) on December 30, 1932 in the sum of $122,658.06, which remains entirely unpaid. Because of the aforesaid indebtedness and judgments against each of them, *and for the purpose of concealing their property from said creditors of each of them, said Sol and Ferd S. Meyer,* in conjunction with the other defendants, engaged in a long series of switching and concealing assets between and among themselves, including the assets above described, so as to alternately evade whichever creditor they needed to evade from time to time.

"(c) Said stock, debentures, notes and evidences of indebtedness, or the accruals and accumulations thereof, continue to exist. They are now worth several hundred thousand dollars, and have never been applied to the satisfaction of said indebtedness or said judgment. The effect of the foregoing transactions has been to withdraw and conceal assets of said Sol Meyer from payment of said indebtedness. Said transfers, manipulations and con-

cealments of assets were made and continued by said Sol Meyer with intent to cheat, hinder, delay and defraud his said creditor bank and its said receiver in the collection of said debt. Said recipients and each of them knew or had notice of said fraudulent intent of said Sol Meyer as above set forth at the time they received said stock, debentures and notes, and they also knew or had notice of said insufficiency of his assets to pay said indebtedness.

"(d) The allegations of the foregoing paragraph 4 and sub-paragraph (a), (b) and (c) thereof (except the date of said corporation's chartering and the facts regarding said judgments, all of which are public records) are made upon information and belief, for the reason that all these allegations relate to matters which by their nature would be, and in fact are, peculiarly and solely within the personal knowledge of the defendants and their private books and records. Plaintiff has not yet had time or opportunity to perform the task of obtaining the proof thereof by taking the depositions of the defendants and by obtaining discovery of their books and records. That task will require much time and labor, due to the involved character of the aforesaid transfers, manipulations and concealments of assets, the long period of time covered thereby, and the long program in which defendants have engaged of actively concealing said facts and the proof thereof from plaintiff, as above stated in this paragraph and also as stated in paragraph 7 below. Based upon that part of the concealed facts which the defendants have recently revealed, partly by compulsion of Court order and partly by their own inadvertence, as more fully stated in paragraph 7 below, plaintiff says that to his best knowledge, information and belief there is good ground to support this complaint, but because of the facts

heretofore stated in this paragraph he cannot further plead or otherwise state the facts alleged in this complaint until he has an opportunity to obtain same by depositions of the defendants and discovery and inspection of their books and records." (Emphasis by the writer.)

It was further alleged that the Family Loan Company was made party for certain reasons, towit:

"(a) The purpose of this action is to subject the interests of all the other defendants in its said stock, debentures and notes to the payment of plaintiff's said judgment. *It is the stakeholder of the res in controversy,* namely: said stock, debentures and notes. It has been made a defendant to bring said res before the Court, and to be bound by any decree rendered by the Court concerning the disposal thereof in satisfaction of plaintiff's judgments, and also to have its books and records, officers and employees examined under proper order of Court concerning all matters covered by this complaint.

"(b) From the chartering of said Family Loan Company down to the present time it has been entirely dominated by said Sol Meyer and the individual defendants. They owned substantially all its capital stock, composed its board of directors and were its executive and managing officers. They have used said corporation and its books, records, stock, debentures, notes and evidences of indebtedness during all said period, and now continue to use same, as the means of carrying out the fraudulent manipulations, transfers and concealments of assets above described in paragraph 4 and its subparagraphs. Under said domination and use by said Sol Meyer and the individual defendants, said corporation, during its entire corporate life, has been and continues to be an active participant in, and party to, the aforesaid fraudulent manipulations, transfers and concealments of assets of which plaintiff complains and from which he seeks relief in this action. The allegations of this paragraph are made upon information and belief for the reason that said facts, by their nature would be, and in fact are, such that the proof thereof lies at present solely within the secret personal knowledge and secret personal and corporate records of the defendants; and plaintiff is not presently able to state them in any other manner than is here done, for the reasons more fully set forth in paragraph 4(d) above." (Emphasis by the writer.)

The motion to intervene and the petition of intervention were based upon the judgment against Ferd S. Meyer mentioned in the foregoing quotation of paragraph (b), by said Peckham as trustee for the creditors of the Meyer-Kiser Bank of *Miami, Florida,* called the Florida Bank, and contained substantially the same allegations of fraud and manipulation, and charged that the available assets were insufficient to pay the creditors of both banks in full but that they remained in existence in the hands of the defendant, Family Loan Company, as the alter ego of the two debtors, Sol and Ferd S. Meyer.

Both the complaint and the intervening petition charged that the facts constituting said fraud remained unknown until within three years before the filing of the complaint and intervention and were therefore within the prescriptive period of the statutes of Florida; and that the petitioners were still without full information of the facts which could only be ascertained by discovery proceedings, when their rights to proceed with this litigation have been recognized.

No objection has been made by the original plaintiff herein to the intervention of the appellant, since he is the same individual in a different capacity, but has been resisted solely by the defendants, all of whom are charged with knowledge and participation in the alleged acts of fraud and deceit.

When the case on the main complaint went back to the court below, the motion and petition to intervene, which had remained dormant because of the decree of dismissal in the former, the intervention was denied by the lower judge in a ruling in which he took notice of a proceeding in bankruptcy by defendant Ferd S. Meyer which was in the records of his own court, as well as other matters dealing with the merits.

Appellant, petitioner in the intervention, insists the case propounded by the complaint and by his own allegations require that he be permitted to intervene as a matter of right under Rule 24(a) (3) of Civil Procedure, 28 U.S.C.A., in that he "is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court * * *" below.

On the other hand the appellees contend that the action of the court was justified because the judgment against Ferd S. Meyer to the Miami Bank was in effect obliterated by his discharge in bankruptcy, in 1934, for the reason no execution and return *nulla bona* had been made on such judgment from which a lien against any property of the debtor could arise.

To determine the matter, we must consider the allegations of both the original complaint, set forth at some length above, as well as those of the intervention. As amended, the complaint dealt only with the judgment against Sol Meyer in favor of the Indiana Bank but was against the same defendants including said Ferd S. Meyer, as are named in the petition of intervention. Sol Meyer was president and one of the principal stockholders in the Indiana Bank, which had been closed on May 12, 1931; that Thomas E. Garvin was appointed Receiver for said bank and obtained a judgment against Meyer which was affirmed as above stated. That Peckham had succeeded to all the rights of the said Garvin, Receiver; that after obtaining said judgment it had been recognized and made executory in the court below, in the

State of Florida to which Sol Meyer had removed, but the interest up to that time had been remitted, leaving the principal of $834,933.33 to bear interest at six percent from date of said recognized judgment, all of which still remains unpaid.

The original complaint further alleged that Garvin, Receiver, had "exhausted all remedies at law for collection * * * entirely without avail"; that Sol Meyer died on November 18, 1939, while a resident of Dade County, Florida, within the jurisdiction of the court below, and his "estate was probated" and Ferd S. Meyer was appointed administrator thereof on March 30, 1940; "whereupon plaintiff's assignor (Garvin) promptly filed a claim upon said judgment in said estate on April 2, 1940, but was paid nothing thereon due to the insolvency of said estate, and it was closed as insolvent on May 22, 1944." The complainant then alleged affirmatively that neither he nor Garvin, Receiver, had any knowledge of the "facts constituting said fraud" until less than three years before the filing of the complaint and that they have not as yet fully uncovered all fraud. Then follows further details of the conduct of the defendants, after the death of Sol Meyer. Further that because of the close relationship between Sol and Ferd Meyer, they continued to conceal the estate above described (the properties in the hands of Family Loan Company) from their respective judgment creditors by certain acts which appear upon the public records; that on September 18, 1933, Ferd Meyer filed a voluntary petition in bankruptcy in this court and therein disclaimed ownership of any of the assets described in the complaint, and (in the same fraudulent manner) procured a discharge in the spring of 1934; that after Sol Meyer's death none of his prospective heirs "took any steps to probate his estate" until forced to do so by plaintiff's predecessor, Garvin, and that Ferd Meyer "procured" his own appointment as administrator and closed the estate of his father as "insolvent"; that none of the assets now sought to be subjected to the payment of the judg-

ment against Sol Meyer were disclosed in the administration of said estate, but remained at all times concealed; that while Ferd Meyer was going through bankruptcy all of said assets described in the complaint "were concealed and carried upon the private records of the defendants as being the property of Sol Meyer and the other individual defendants, except Ferd S. Meyer; that "after said Ferd S. Meyer had become immune (as he supposed) against the collection of the aforesaid judgment owing by him by means of said bankruptcy, he assumed the ostensible ownership of said assets or a substantial part thereof, so that said assets were out of Sol Meyer's name by the time plaintiff's judgment was rendered against him on October 18, 1938, and by the time of his death on November 18, 1939. In fact, said Ferd S. Meyer and his codefendants paid nothing, or gave no adequate consideration, for the placing of said assets in their names. Said assets or a substantial part thereof were at all times and still remain the actual and equitable property of said Sol Meyer, as between plaintiff and the defendants. Said Ferd S. Meyer and the other defendants have collaborated by the means aforesaid and continue to collaborate down to the present time in keeping said assets and Sol Meyer's said interest therein concealed from plaintiff and his predecessor, by the secret device of switching and concealing said assets between themselves, so as to alternately conceal them from the creditors of the son Ferd when he wanted to go through bankruptcy, and from the creditors of the father Sol when his estate had to be probated."

The complaint further charged that after the death of Sol Meyer execution had issued and the return *nulla bona* was made, that Ferd S. Meyer had himself appointed guardian of two other mentally incapacitated sons of Sol Meyer and thereafter filed no inventory of their personal property nor any annual accounts of his administration as required by the law of Florida, "until plaintiff compelled him to do so" by obtaining an order

therefor from the proper probate court on March 28, 1946, when for the first time he disclosed that he held in his said capacity as guardian debentures of the Family Loan Company in the sum of $76,000, which had been in his possession as far back as May 17, 1940, as well as details of their possession and administration.

That on May 20, 1946, complainant filed in the United States District Court for Puerto Rico a suit similar to the present one, seeking to uncover assets in the Ronrico Corporation which belonged to Sol Meyer and which had been fraudulently concealed from the execution of the judgment of the Indiana Bank. Other charges were made in the last mentioned case with respect to the fraud of both Sol Meyer and Ferd Meyer in which the latter made affidavits as to certain statements of fact but which on discovery by the complainant were obviously self-contradictory; that notwithstanding the defendants in that proceeding obtained a summary judgment in their favor, 7 F.R.D. 324, it was reversed by the United States Circuit Court of Appeals for the First Circuit as reported in Peckham v. Ronrico Corp., 171 F.2d 653.

And finally,

"(d) By reason of the aforesaid long and active program of concealment by the defendants, plaintiff did not begin to discover the facts constituting the aforesaid fraud and cause of action until he obtained the forced filing of said long delayed guardian's report of said Ferd S. Meyer on May 15, 1946. Thereafter, he first discovered the fact that said Sol and Ferd Meyer, father and son, had engaged in a program of switching and concealing assets between themselves and the other defendants in this case, including Ferd Meyer's wife, the defendant, Rosalyn Meyer, and the Meyers' agent, defendant Maroon, when they filed their two self-contradictory sets of affidavits in said Ronrico case, which are described in the Court of Appeals opinion in the Ron-

rico case, 171 F.2d 653. Continuously from the time of making said discoveries until the present time, he and his counsel have been engaged in arduous and prolonged litigation in said Ronrico case, both in the District Court and Court of Appeals, and the mandate from said appeal only went down on February 1, 1949. Immediately thereafter, at the earliest opportunity, plaintiff brought the present action. The complaint in this action is similar in all essential respects to the complaint in said Ronrico case, as appears from the Court record and opinion in that case, except that the present action seeks to reach and apply the stock of Family Loan Company upon plaintiff's judgment against Sol Meyer, whereas said Ronrico complaint seeks to apply the stock of Ronrico Corporation upon the same judgment. Said Ronrico case is now actively pending, not yet tried, following the reversal of the summary judgment."

The prayer of the complaint was that all of the securities held by the said Family Loan Company and Ronrico be subjected to the payment of complainant's judgment; and that it "at the proper time, have aid of the court to compel the defendants to make further disclosures."

In the motion of appellants here to intervene, as well as in the petition of intervention it was charged that the property described in paragraphs 4 and 5 of the complaint was subject to the control and disposition of the court and should be applied to the satisfaction of both the judgment of the Indiana Bank against Sol Meyer "which now totals $1,350,000 principal and interest" and to Intervenor's claim. The accompanying intervention also "seeks to apply a substantial part of the same properties to the payment of the judgment against Ferd S. Meyer, assignee, growing out of the affairs of the Miami Bank, now amounting to $250,000 principal and interest", and to allow the whole to be applied to the satisfaction of the judgment of the cred-

itors of the Indiana Bank "would adversely affect the collection" of said judgment of the Miami Bank against Ferd S. Meyer upon which the intervening claim is based.

As heretofore stated without going into a full analysis, motion and petition of intervention makes substantially the same charges of fraud and intermingling of assets by Sol and Ferd Meyer, as are contained in the original complaint discussed above.

It thus appears, in view of the alleged insufficiency of said assets, that if the allegations are proven, the property described may be subjected to the payment of both claims. It does not lie in the mouths of defendants to say that the complainant may have some advantage over intervenor, due to the former's diligence. It will be the latter's responsibility to establish his claim against property of Ferd Meyer. It is also clear, that if the appellant is denied the right to intervene, and complainant is successful, all of said property may be consumed by the judgment of the Indiana Bank against Sol Meyer, thereby prejudicing the rights of the creditors of the Miami Bank with respect to their judgment against Ferd Meyer. This it is believed presents the situation as contemplated by Rule 24(a) (3) of Fed.Rules Civil Procedure.

When the court below was confronted with these charges thus entitling the intervenor to be heard, we think the petition of intervention should have been allowed. People of State of California v. United States, 9 Cir., 180 F.2d 596. Both proceedings look to the ultimate liquidation and distribution of the properties or their proceeds between the creditors of both institutions, and contemplate their being drawn ultimately into the possession and control of the court below. Such matters as prescription and the discharge of Ferd Meyer in bankruptcy should be heard in a trial on the merits in which all parties concerned will have full opportunity to be heard as to their respective claims and contentions. If it should turn out, as a result of such

a trial, that the operations of Sol Meyer and Ferd Meyer were as fraudulent as claimed by complainant and the intervenor, then the court may be called upon to exercise its equity powers in attempting to unravel and repair the wrongs thus charged. If the discharge in bankruptcy was also fraudulent and a part of the general scheme, the court might be justified in looking through it to lay hold of property and assets of which the creditors of both banks were deprived over this long period of time. It is a situation equitable in its nature and the allegations of both complaints strongly appeal to the conscience of the court for the application of the maxim that "fraud vitiates everything".

The judgment below is reversed, the petition of intervention and this cause is remanded to the court below for further proceedings not inconsistent with the views herein expressed.